**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Cr. No. 1:07-cr-00052 Erie |
| | ) | (Civ. No. 12-61 Erie) |
| JASON SCALISE, | ) | |

## Opinion and Order

Pending before the Court is Petitioner Jason Scalise's Motion to Vacate, Set Aside, or Modify Sentence under 28 U.S.C. § 2255, filed at Criminal No. 07-52 Erie, with Brief in Support. ECF No. 86. The government has filed a Response to the Motion (ECF No. 89), to which Mr. Scalise has filed a Reply to Opposition (ECF No. 105). Mr. Scalise contends in his motion that he was denied effective assistance of counsel under the Sixth Amendment of the Constitution and denied his right to due process under the Fifth Amendment to the Constitution based on his trial counsel's failure to investigate and present mitigating evidence to government counsel in order to negotiate a favorable plea agreement, or to the Court at sentencing to obtain a greater variance or a departure, and thus a lower sentence.

Mr. Scalise also contends that he was denied effective assistance of counsel because his attorney operated under an actual conflict of interest while representing him. He alleges that the conflict of interest was due to his counsel's contemporaneous federal criminal investigation by the same office prosecuting Mr. Scalise, and that this conflict affected the adequacy of his representation. Mr. Scalise requests an evidentiary hearing to fully develop the record on these issues. ECF No. 109. Because we are unable to conclusively determine whether Mr. Scalise is entitled to relief based on the record, we will grant the motion for an evidentiary hearing.

1

I. Background

A. Mr. Scalise's Criminal Case

On October 23, 2007, a Criminal Complaint was filed against Jason Scalise. ECF No. 1. Mr. Scalise retained Timothy J. Lucas, Esquire, as his counsel. ECF No. 15. On November 13, 2007, a federal grand jury returned an indictment against Mr. Scalise charging him with one count of receipt and attempted receipt of material depicting the sexual exploitation of a minor in violation of 18 U.S.C. §2252(a)(2), and one count of possession and attempted possession of material depicting the sexual exploitation of a minor in violation of 18 U.S.C. §2252(a)(4)(B). ECF No. 16.

On January 20, 2009, Mr. Scalise entered a plea of guilty to both counts of the indictment. ECF No. 45. A sentencing hearing was scheduled for May 11, 2009. ECF No. 45. The sentencing hearing was rescheduled to August 4, 2009 at the request of defense counsel. ECF No. 47. Prior to the hearing, a presentence report was prepared by the Probation Office, which calculated Mr. Scalise's advisory sentencing guidelines range at 210 to 240 months of imprisonment based upon an offense level of 37 and a criminal history category of I. PSR, ¶63. Neither side objected to this calculation of the guideline range.

At sentencing, Mr. Lucas spoke at length about a report prepared by a Clinical and Consulting Psychologist, Dr. Jerome Troncone, based on his examination of Mr. Scalise. Sentencing Tr. 9-11, 15-16, ECF No. 66. The thrust of defense counsel's argument to this Court was that Mr. Scalise did not meet the DSM4 criteria for being labeled a pedophile, and that the Court should consider this assertion in determining Mr. Scalise's future danger to society. Sentencing Tr. 10. Mr. Lucas also reminded this Court of the voluntary counseling Mr. Scalise had undergone before the time of sentencing. Sentencing Tr. 11.

Mr. Lucas also challenged several increases in the base offense level arguing, among other things, that the increases are not grounded in empirical data. Sentencing Tr. 12-14. First, he challenged the two-level increase for use of a computer, arguing that this has become so commonplace that the enhancement is unreasonable. Sentencing Tr. 13. He also argued against the application of increases for number of images of prepubescent individuals under the age of 12, and for images portraying sadomasochistic conduct. Sentencing Tr. 13-14. The thrust of this argument was Mr. Lucas's contention that these penalties were "a Sentencing Commission decision to simply reach out and increase these penalties for certain factors where there really is no basis to do that." Sentencing Tr. 14.

In conclusion, Mr. Lucas reminded this Court of the §3355 factors to be considered when imposing a sentence, and argued that, in light of such considerations and concerns, the guidelines seemed "so Draconian compared to the conduct of a Jason Scalise as to be unjustified and unwarranted." Sentencing Tr. 15. The focus of his argument was pointed to the second and third of the §3355 factors: "[T]o afford adequate deterrence to criminal conduct" and "to protect the public from further crimes of the defendant." See 18 U.S.C. §3553(a)(2)(B), 18 U.S.C. §3553(a)(2)(C). In arguing for strong consideration of these factors, Mr. Lucas again directed this Court to Dr. Troncone's report finding that Mr. Scalise was not a pedophile. Sentencing Tr. 16. Mr. Lucas concluded by asking the Court, in light of the advisory nature of the guidelines, to take into account the §3553(a) factors in exercising our discretion. Sentencing Tr. 17.

After Mr. Lucas addressed the Court, the Assistant United States Attorney prosecuting the case spoke. He questioned Dr. Troncone's assertion that Mr. Scalise was not sexually interested in children, calling the claim "laughable." Sentencing Tr. 26. The government otherwise did not address Dr. Troncone's report, and instead focused on the size and breadth of

Mr. Scalise's collection of child pornography and the victims of the crime. Sentencing Tr. 26. The Assistant United States Attorney further argued that the guidelines were based in "human decency," and therefore were not Draconian as Mr. Lucas suggested. ECF No. 66, Sentencing Transcript, at 27-28.

After hearing arguments, we imposed a sentence of 168 months at Count 1, and 120 months at Count 2 to be served concurrently for a total sentence of 168 months. Sentencing Tr. 31. This sentence was a 42-month variance from the guideline's suggested minimum sentence of 210 months. We explained after imposing sentence that we varied, in part, because enhancements for this offense concern features that are present "in many, if not most, cases [that] diverge[] significantly from the Sentencing Commission's typical empirical approach and produces a sentence greater than necessary." Sentencing Tr. 36 (quoting United States v. Hanson, 561 F.Supp.2d 1004 (E.D.Wis. 2008)).

Following his sentencing, Mr. Scalise appealed to the United States Court of Appeals for the Third Circuit, which affirmed his sentence. United States v. Scalise, 398 Fed. Appx. 736, 2010 WL 4230797 (3d Cir. Oct. 27, 2010). Mr. Scalise then filed a petition for a writ of certiorari with the United States Supreme Court. The Supreme Court ultimately denied the petition on February 28, 2011. Scalise v. United States, 131 S.Ct. 1585 (Feb. 28, 2011) (cert. denied). Mr. Scalise then filed the instant petition.

**B. Mr. Lucas's Criminal Case**

In order to resolve this Motion, it is also necessary to provide some background on Mr. Lucas. Mr. Lucas had maintained a practiced law in the Western District of Pennsylvania, which included a thriving criminal defense practice. This practice was abruptly interrupted in 1992, when Mr. Lucas pleaded guilty to an Information charging him with willful failure to file a

4

timely tax return in violation of 26 U.S.C. § 7203.  United States v. Lucas, Cr No. 92-19 Erie. On February 1, 1993, we sentenced Mr. Lucas to a term of imprisonment of 3 months, to be followed by one year of supervised release.  Judgment, 2/1/1993, Ex. K, attached to ECF No. 85.  Eventually, Mr. Lucas regained his law license and again established a thriving law practice, including representing criminal defendants in state and federal court.

Unfortunately, Mr. Lucas again began to evade his tax obligation beginning in 1997, culminating in an Information charging him with Tax Evasion from August 25, 1997, and continuing to the date of the Information.  United States v. Lucas, Cr No. 10-45 Erie.  In that case, the government indicated that Mr. Lucas knowingly and willfully evaded the payment of $329,704 in tax due for the 11-year period set forth in the Information.  Tr. of Change of Plea, 8/4/2010, at 14.   Mr. Lucas pleaded guilty to the Information, and was eventually sentenced to imprisonment of 12 months and 1 day, to be followed by 2 years of supervised release.  Judgment, 1/12/2011, ECF No. 28, at Cr No. 10-45 Erie.  This sentence was a variance from the advisory guideline range of 21 to 27 months' imprisonment.

The investigation of Mr. Lucas's failure to meet his tax obligations began as early as 2004, and included a July 24, 2007 interview of Mr. Lucas by IRS agents, with numerous subsequent contacts between the IRS agents and Mr. Lucas or his representatives.  On October 31, 2007, Mr. Lucas appeared on behalf of Mr. Scalise at his detention hearing.  Thus, there is no question that Mr. Lucas was well aware before he began his representation of Mr. Scalise, that he was being investigated for his conduct and that it was highly likely that the investigation would result in criminal charges being filed against him

On September 9, 2009, the IRS agent investigating Mr. Lucas completed a Criminal Initiation Form referring the matter to the United States Attorney's office for the Western

District of Pennsylvania. On September 14, 2009, Mr. Lucas was contacted by Assistant United States Attorney Jim Wilson, from the Pittsburgh Division of the Western District of Pennsylvania, who informed Mr. Lucas that the IRS investigation had been referred to his office for prosecution. Following this notification, Mr. Lucas withdrew from his representation of all his federal clients. ECF No. 89 at 28.

**II. Standard of Review**

Under section 2255, a federal prisoner in custody may move the court which imposed the sentence to vacate, set aside, or correct the sentence upon the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. Relief under this provision is "generally available only in 'exceptional circumstances' to protect against a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." United States v. Gordon, 979 F. Supp. 337, 339 (E.D. Pa. 1997), citing Hill v. United States, 368 U.S. 424, 428 (1962). The statute provides, as a remedy for a sentence imposed in violation of the law, that "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255.

The Court must consider the motion together with all the files, records, transcripts and correspondence relating to the judgment under attack. See 28 U.S.C. § 2255, Rule 4(b). A district court considering a § 2255 motion "'must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record,'" United States v. Booth, 432 F.3d 542, 545 (3d Cir. 2005), quoting Virgin Islands v. Forte, 865 F.2d 59, 62 (3d

Cir. 1989), and it "abuses its discretion if it fails to hold an evidentiary hearing when the files and records of the case are inconclusive as to whether the movant is entitled to relief." Booth, 432 F.3d at 546, citing United States v. McCoy, 410 F.3d 124, 134 (3d Cir. 2005). However, the final disposition of a § 2255 motion lies with the discretion of the trial judge, See Virgin Islands v. Nicholas, 759 F.2d 1073, 1075 (3d Cir. 1985), and a district court may summarily dismiss a § 2255 motion where the motion, files and records "show conclusively that the movant is not entitled to relief." United States v. Mason, 2008 WL 938784, 1 (E.D. Pa. 2008), citing Forte, 865 F.2d at 62.

Because we are unable to conclusively determine whether Mr. Scalise is entitled to relief based on the record, we will hold an evidentiary hearing.

### III. Discussion

Mr. Scalise seeks relief, in general, on the basis he was denied effective assistance of counsel under the Sixth Amendment of the Constitution. "A claim of ineffective assistance requires a defendant to establish that counsel's representation fell below an objective standard of reasonableness and that the deficient performance prejudiced the defendant." McAleese v. Mazurkiewicz, 1 F.3d 159, 166 (3d Cir. 1993), (citing Strickland v. Washington, 466 U.S. 668, 687-688 (1984)). Mr. Scalise's first argues that his counsel was ineffective for failing to properly investigate and present mitigating evidence, both prior to entering into a plea agreement, and at sentencing. Next, Mr. Scalise argues that his counsel, Timothy Lucas, represented him while operating under an actual conflict of interest due to his own criminal investigation, and that this conflict of interest affected Mr. Lucas's representation.

There is some overlap between these two arguments in the sense that Mr. Scalise argues that the criminal investigation of Mr. Lucas during the pendency of his own case is a partial

explanation for trial counsel's failure to properly investigate and present mitigation evidence on behalf of Mr. Scalise. However, Mr. Scalise argues that separate and apart from any alleged conflict of interest, Mr. Lucas's performance fell below an objective standard of reasonableness in investigating and presenting mitigating evidence on his behalf. In addition, Mr. Scalise argues that the actual conflict of interest Mr. Lucas was operating under caused him, in some sense, to seek the goodwill of the office prosecuting him by foregoing a proper and vigorous investigation and presentation on behalf of Mr. Scalise.

We will address Mr. Scalise's actual conflict of interest argument first, followed by his claim of ineffectiveness for failure to investigate and present mitigating evidence.

### A. Applicable Law

A "petitioner claiming a deprivation of his or her Sixth Amendment right to effective assistance of counsel must show that: (1) counsel's performance was deficient; and (2) counsel's deficient performance caused the petitioner prejudice." Ross v. District Attorney of the County of Allegheny, 672 F.3d 198, 210 (3d Cir. 2012), citing Strickland, 466 U.S. at 687.

"To show deficient performance, 'a person challenging a conviction must show that counsel's representation fell below an objective standard of reasonableness. . . . The challenger's burden is to show that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" Ross, 672 F.3d at 210 (quoting Harrington v. Richter, ––– U.S. –––, –––, 131 S.Ct. 770, 787, 178 L.Ed.2d 624 (2011)). "'[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" Hinton v. Alabama, ––– U.S. –––, –––, 134 S.Ct. 1081, 1088, (2014) (quoting Strickland, 466 U.S. at 690). "Because advocacy is an art and not a science, and because the adversary system requires deference to counsel's informed decisions,

8

strategic choices must be respected . . . if they are based on professional judgment." Strickland, 466 U.S. at 681. "The Supreme Court directs that our 'scrutiny of counsel's performance must be highly deferential' to avoid holding counsel incompetent because of reasonable strategic or tactical judgments which, with the benefit of tactical hindsight, might prove not to have best served his client's interests." United States v. Loughery, 908 F.2d 1014, 1018 (D.C.Cir.1990), quoting Strickland, 466 U.S. at 689.

With respect to prejudice, a petitioner must "'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Hinton, 134 S.Ct. at 1089 (quoting Strickland, 466 U.S. at 694); see also Ross, 672 F.3d at 210 (quoting Richter, 131 S.Ct. at 787).

With respect to a claim alleging that counsel was ineffective due to an actual conflict of interest the applicable law is as follows. "In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." Cuyler v. Sullivan, 446 U.S. 335, 348 (1980). Further, "a defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief." Id. at 349-50. However, a "possibility of conflict is insufficient to impugn a criminal conviction," and a defendant must establish that an *actual conflict of interest* was present. Id. "Until . . . a defendant shows that his counsel *actively represented* conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance." Mickens v. Taylor, 535 U.S. 162, 175 (2002) (quoting Sullivan, 446 U.S. at 350).

### B. Actual Conflict of Interest

In attempting to prove that an actual conflict of interest was present during the pendency of Mr. Lucas's representation of Mr. Scalise, Mr. Scalise contends that Mr. Lucas "had an interest in seeking the goodwill of the prosecuting agency, the United States Attorney's Office for the Western District of the Pennsylvania." ECF No. 105 at 25. Mr. Scalise cites United States v. Levy, 25 F.3d 146 (2d Cir. 1994), in which the Court found that defense counsel "may have believed that he had an interest in tempering his defense of [defendant] in order to curry favor with the prosecution, perhaps fearing that a spirited defense . . . would prompt the government to pursue the case against [defense counsel] with greater vigor." Levy, 25 F.3d at 156. In his Reply, Mr. Scalise appears to contend that Mr. Lucas's concurrent investigation by the IRS, combined with the likelihood of his imminent prosecution by the Western District of Pennsylvania, affected the adequacy of Mr. Scalise's representation. ECF No. 105 at 45 ("despite his awareness of Mr. Scalise's significant mental health issues, trial counsel failed to investigate or present them to the prosecutor, for purposes of obtaining a favorable plea agreement, and to the sentencing court, for purposes of obtaining a downward departure of variance"). Mr. Scalise appears to be arguing that Mr. Lucas made strategic decisions with his own prosecution in mind, rather than the best interests of Mr. Scalise.

The government argues that because Mr. Lucas's case was not referred to the United States Attorney's Office in the Western District until after Mr. Scalise was sentenced, there was no conflict of interest. ECF No. 89 at 21. The thrust of the government's claim is that because the same body prosecuting Mr. Scalise was not concurrently prosecuting Mr. Lucas, there is no fear of divided loyalties on the part of the defense attorney. The government states that the record "clearly establishes that Lucas did not pull his punches in Scalise's case in an attempt to

better his own situation" because "Lucas sought and received a significant downward variance of 42 months for Scalise." ECF No. 89 at 29.

Further, the government argues that because the charges against Mr. Lucas were not related to the charges against Mr. Scalise, there was no conflict. ECF No. 89 at 26. In support of this claim, the government contends that several Courts have rejected conflict arguments when the charges against Defendant and trial counsel are unrelated. ECF No. 89 at 26 (citing United States v. Aiello, 900 F.2d 528, 531-32 (2d Cir. 1990); see also United States v. Eisen, 974 F.2d 246 (2d Cir. 1992).

We granted discovery so the parties could more fully investigate whether there was a conflict of interest, particularly whether "Mr. Lucas had a personal interest that was 'inconsistent . . . with [that] of his client.'" Opinion and Order on Discovery Motion, ECF No. 100 at 6. In addition discovery was granted so that Mr. Scalise could determine whether "Mr. Lucas was sufficiently aware of the likelihood of an imminent referral to the United States Attorney such that a conflict existed just as if the United States Attorney already controlled the investigation." Id.

Mr. Scalise, through his new counsel, claims that discovery revealed "trial counsel was aware, if not painfully aware, that his own prosecution for criminal tax offenses was both likely and imminent during the time that he represented Mr. Scalise." ECF No. 105 at 25. Mr. Scalise claims that Mr. Lucas's retention of a lawyer, his statements made during an interview with IRS agents, and the volume of unpaid taxes combined with the duration of delinquency individually and collectively support the assertion that Mr. Lucas was sufficiently aware of the iminency of his prosecution. ECF No. 105 at 43-45.

Mr. Scalise argues that Mr. Lucas's awareness of the investigation, and resulting conflict "'affected the adequacy of [Mr. Lucas's] representation.'" ECF No. 105 at 45 (quoting Cuyler, 446 U.S. at 335). The thrust of this claim centers on Mr. Lucas's alleged "failure to investigate or present [Mr. Scalise's significant mental health issues] to the prosecutor . . . and to the sentencing court," his failure to "file objections to the presentence report," and his failure to "file a sentencing memorandum with the court." ECF No. 105 at 45. Mr. Scalise claims that, because there was an actual conflict, and that it affected the adequacy of his representation, he is entitled to the relief sought.

In response, the government argues that Mr. Lucas chose a trial strategy that was not unreasonable when he decided to pursue a challenge based on the §3553 factors for sentencing, rather than the potential for mental illness. The government cites a Supreme Court ruling stating, "there comes a point where a defense attorney will reasonably decide that another strategy is in order, thus 'mak[ing] particular investigations unnecessary.'" Cullen v. Pinholster, 131 S.Ct. 1388, 1407 (2011); see also Harrington v. Richter, 131 S.Ct. 770, 788 (2011). The government appears to be arguing that because the strategy was not unreasonable, it cannot be said that Mr. Lucas's alleged conflict adversely affected Mr. Scalise.

In determining whether the record conclusively shows that the prisoner is entitled to no relief we are guided by the Third Circuit Court of Appeals, which stated "that a district court's failure to grant an evidentiary hearing when the files and records of the case are inconclusive on the issue of whether movant is entitled to relief constitutes an abuse of discretion." Solis v. United States , 252 F.3d 289, 294-95 (3d Cir. 2001).

The Supreme Court in Wood v. Georgia, in remanding a case for an evidentiary hearing stated, "[o]n the record before us, we cannot be sure whether counsel was influenced in his basic

strategic decisions by the interests of the employer who hired him. If this was the case, the due process rights of petitioners were not respected at the revocation hearing, or at earlier stages of the proceedings below." 450 U.S. 261, 272 (1981). The present case presents a similar situation in that if his own interests in currying favor with the prosecutors influenced Mr. Lucas's strategic decisions, Mr. Scalise's interests would be affected.

Similarly, the Third Circuit Court of Appeals held in Briguglio v. United States that "[t]he showing made by Briguglio raises a clear possibility of actual conflict, actual effect on the adequacy of representation, and prejudice. However, the record in this case is not sufficient for us adequately to address any of those questions because Briguglio was not afforded the evidentiary hearing he sought." 675 F.2d 81, 83 (3d Cir. 1982).

The Second Circuit Court of Appeals in Armienti v. United States outlined the requirement for a showing of actual conflict, and how a Court should review such a claim. 234 F.3d 820 (2d Cir. 2000). The Armienti Court stated, "[t]here is an actual conflict between lawyer and client when, during the course of the representation, the attorney's and defendant's interests 'diverge with respect to a material factual or legal issue or to a course of action.'" Armienti, 234 F.3d at 824 (quoting Cuyler, 446 U.S. at 356 n.3). "To prove the adverse effect, the defendant must demonstrate that some 'plausible alternative defense strategy or tactic might have been pursued' and that the 'alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests.'" Id. (quoting Winkler v. Keane, 7 F.3d 304, 307 (2d Cir. 1993)). In Armienti, the defense lawyer "was being criminally investigated by the same United States Attorney's office that was prosecuting Armienti." Id. The Court stated that "[t]he interests of the lawyer and client may therefore have diverged with respect to their dealings with that office." Id. at 824-25.

13

The government challenges Mr. Scalise's reliance on Armienti as unavailing, arguing "[a]fter the Second Circuit remanded the case for an evidentiary hearing, the district court, at the conclusion of the hearing, found no actual conflict of interest." ECF No. 89 at 24. This argument does not counter Mr. Scalise's request for an evidentiary hearing. Simply because an evidentiary hearing in this case *may* lead to a finding of no actual conflict, it does not mean that Mr. Scalise is not entitled to such a hearing.

The issue is sufficiently uncertain such that we deem that an evidentiary hearing is required to conclusively establish whether Mr. Lucas's choices were a product of legal strategy, or if his actions were motivated by an attempt to serve two masters. The record is not developed enough for this Court to determine what led Mr. Lucas to choose his legal strategy, and whether it amounts to ineffectiveness that affected Mr. Scalise's representation and thus we are "obliged to follow the statutory mandate to hold an evidentiary hearing." McCoy, 410 F.3d at 134.

### C. Failure to Investigate and Present Mitigating Evidence

As noted, Mr. Scalise also argues that he was denied effective assistance of counsel under the Sixth Amendment of the Constitution and denied his right to due process under the Fifth Amendment to the Constitution based on Mr. Lucas's failure to properly investigate and present mitigating evidence to either the government or the Court. Mr. Scalise argues that separate and apart from any alleged conflict of interest, his counsel's performance fell below an objective standard of reasonableness in investigating and presenting evidence on his behalf.

> "Under Strickland, 'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.'"

14

Hinton, — U.S. —, —, 134 S.Ct. at 1088 (quoting Strickland, 466 U.S. at 690–691, 104 S.Ct. 2052).

### 1. Whether Counsel's Performance was Deficient

Defense counsel argues that Mr. Lucas failed to introduce potentially mitigating evidence regarding Mr. Scalises's mental health issues, and in particular, Asperger's Syndrome. It is undisputed that Mr. Lucas neither investigated the issue of Asperger's Syndrome, nor argued for mitigation on that basis.

The government argues that Mr. Lucas had no reason to investigate the possibility of Asperger's Syndrome, as neither of the doctors who evaluated or treated Mr. Scalise prior to his sentence indicated that he had Asperger's Syndrome. After Mr. Scalise had pleaded guilty, his mother allegedly informed Mr. Lucas that her son has Asperger's Syndrome. The government discounts this information as lacking any basis, and is also unsupported by the doctors who had examined Mr. Scalise. Thus, as a strategic choice, the government argues that Mr. Lucas's decision not to investigate was reasonable.

We cannot know if it was unreasonable for Mr. Lucas to fail to investigate because we do not have sufficient evidence to determine what he knew and when. More significantly, we are without sufficient information to determine if Mr. Lucas's choice not to investigate (or not to investigate further) was based on a mistaken belief that the information was not true or would not matter at sentencing, or whether it was based on some other strategic decision.

Additionally, we agree with counsel for Mr. Scalise that the argument cannot be decided based narrowly on the issue of Mr. Scalise's Asperger's Syndrome. Mr. Scalise's argument encompasses a much broader ineffectiveness allegation based on (i) the failure to investigate and present all of Mr. Scalise's mental health issues; (ii) an inadequate presentation at sentencing

itself, that relied solely on a two-page summary of treatment; (iii) inadequate argument regarding the guidelines and failure to request a significant variance; (iv) failure to file a sentencing memorandum at all; (v) failure to object to specific enhancements; and (v) failure to seek a downward departure. It appears based on the evidence provided by counsel that significant information was available (apart from the Asperger's Syndrome question) concerning Mr. Scalise's mental health and social, emotional, and academic difficulties. Thus, it is possible that Mr. Lucas's failure to do more than present Dr. Troncone's report at sentencing amounts to ineffectiveness.

There is also Mr. Scalise's related claim of ineffectiveness based on the failure of trial counsel to initially seek a favorable plea agreement. Mr. Scalise points out that in Mr. Lucas's own criminal case, he hired a forensic psychiatrist to evaluate him. This psychiatrist prepared a comprehensive report, which was then used in negotiations and actually resulted in a favorable plea to an Information of only one count, rather than an Indictment charging multiple counts. Counsel for Mr. Scalise argues that this course of action demonstrates that Mr. Lucas knew what was required in Mr. Scalise's case, especially considering that he appeared on behalf of Mr. Scalise before the Indictment was filed, but failed to do so.

We are mindful that we must presume that counsel performed in a professionally reasonable manner and that his "conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. "The presumption can be rebutted by showing 'that the conduct was not, in fact, part of a strategy or by showing that the strategy employed was unsound.'" Lewis v. Horn, 581 F.3d 92, 113 (3d Cir. 2009), quoting Thomas v. Varner, 428 .3d 491, 499-500 (3d Cir. 2005). Here, we are faced with the question of whether Mr. Lucas conducted a "thorough investigation of law and facts." Strickland, 466 U.S. at 690. In addition

16

we must determine whether Mr. Lucas's choices were actually informed decisions based on professional judgment. This case also raises the question of whether Mr. Lucas's choices were part of a deliberate strategy, and whether the strategy chosen was sound. Based on the record before us we conclude that an evidentiary hearing is necessary before we can determine these questions.

### 2. Prejudice

It is not sufficient to show only that trial counsel's performance was deficient. The second prong of Strickland also requires that "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S.Ct. 2052. The outcome in this case is the ultimate sentence Mr. Scalise received. "The reasonable probability of any decrease in [defendant's] sentence is sufficient to establish prejudice." Smack, 347 F.3d at 540; see also Glover, 531 U.S. at 203 ("Authority does not suggest that a minimal amount of additional time in prison cannot constitute prejudice. Quite to the contrary, our jurisprudence suggests that any amount of actual jail time has Sixth Amendment significance.")

The government argues that we are able to determine that Mr. Scalise was not prejudiced as his trial counsel was able to obtain a sentence that varied 42 months below the low end of the advisory guideline range he faced. Although we did vary, we did so based on our own practice of always discounting the use of a computer and not because of trial counsel's' arguments. The fact that Mr. Scalise received a variance does not, in and of itself, mean that he could not have been prejudiced and thus may have been received a greater variance. See Smack, 347 F.3d at

17

540) and Glover, 531 U.S. 198 (2001) (any reduction in sentence constitutes substantial prejudice for purposes of Strickland analysis). Depending on the evidence to be presented at an evidentiary hearing, it is possible that had trial counsel presented compelling evidence in mitigation and additional arguments in favor of a variance, there would be a reasonable probability that Mr. Scalise would have received a greater variance and thus a lower sentence.

This court has imposed sentences in over 20 cases where the defendant was convicted a child pornography offense. In nearly every case we varied from the applicable advisory guideline range. In three of the cases in which we did not vary the defendant was convicted of at least one count of inducing a minor to engage in illegal sexual activity or sexual exploitation of a minor. In one case where the defendant was convicted of possession of material depicting the sexual exploitation of a minor, and faced an advisory guideline range of 135 to 168 months, we imposed the 120 month statutory maximum sentence. In addition, we declined to vary in one case where the defendant was convicted of possession of material depicting the sexual exploitation of a minor. In every other case we have imposed a sentence below the advisory guideline range.

In twenty other cases in which we varied below the advisory guideline range defense counsel filed a Memorandum in Aid of Sentencing in which a specific argument for a variance was made in all but two of the cases. In the cases where a Memorandum on behalf of the defendant was filed, all but four of the cases included some form of a mental health evaluation submitted to the court in mitigation. In the four cases that did not include a mental health evaluation, two of the cases included extensive arguments in mitigation based on the defendant's specific social and emotional difficulties. In the remaining two cases in which a Memorandum

was filed but no mental health evaluation was provided, there appears not to have been any basis for counsel to seek a mental health evaluation.

Of the two cases where no Memorandum at all was filed, one case was Mr. Scalise's. In the other case the defendant was charged in a two-count indictment, but his counsel was able to negotiate a written plea agreement whereby the defendant agreed to plead guilty to one count in exchange for the government agreeing to dismiss the second count.

A survey of our own cases shows that Mr. Scalise's trial counsel provided significantly less information to the Court prior to sentencing than was afforded to nearly every other similarly situated defendant. Presuming that trial counsel was ineffective solely for purposes of our prejudice prong analysis, this makes it difficult to definitively state that had we been presented with similar mitigating information and argument at sentencing that we would not have imposed a lesser sentence than we did. As a result, we find that an evidentiary hearing is necessary.

## IV. <u>Conclusion</u>

We find that Mr. Scalise has made a sufficient showing that his counsel may have represented him under an actual conflict of interest during the pendency of his prosecution that potentially affected his representation, such that we must grant an evidentiary hearing. At this hearing, Mr. Scalise must conclusively show that Mr. Lucas "actively represented conflicting interests" in order to establish the "constitutional predicate for his claim of ineffective assistance." See <u>Mickens</u>, 446 U.S. at 350. We further find that an evidentiary hearing is necessary to address the alternative argument that Mr. Lucas's performance was deficient and that this deficient performance prejudiced Mr. Scalise.

We note that both avenues for relief present a high bar for a petitioner to overcome. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [outcome] cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686.

Accordingly, we will grant Mr. Scalise's motion for an evidentiary hearing.

Date: May 5, 2015

Maurice B. Cohill, Jr.
Senior United States District Court Judge

### ORDER

AND NOW, to-wit, this 5th day of May, 2015, it is hereby ORDERED, ADJUDGED, and DECREED that Petitioner's Motion for an Evidentiary Hearing on Motion to Vacate Pursuant to 28 U.S.C. § 2255 (ECF No. 109) is GRANTED.

An Evidentiary Hearing on the motion is hereby set for **Thursday, July 23, 2015** at **10:00 a.m.** in Courtroom 8A, 8th Floor, United States Courthouse, 700 Grant Street, Pittsburgh, Pennsylvania.

Maurice B. Cohill, Jr.
Senior United States District Judge